UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID BATES,

       Plaintiff,                          Case No. 06-13470

vs.                                         DISTRICT JUDGE VICTORIA A. ROBERTS
                                                MAGISTRATE JUDGE STEVEN D. PEPE

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

**I. BACKGROUND**

David Bates brought this action under 42 U.S.C. §405(g) and § 1383(c)(3) to challenge a final decision of the Commissioner denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Both parties have filed motions for summary judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED** and the Commissioner's motion for summary judgement **GRANTED**.

**A. Procedural History**

Plaintiff applied for DIB in July 2003, alleging that he became disabled July 1, 2002, because of a left knee replacement (R. 9, 38, 42).[1] After Plaintiff's claim was initially denied (R. 15-19), a hearing was held on June 23, 2005, before Administrative Law Judge Richard

---

[1] At the administrative hearing, Plaintiff amended his alleged onset date of disability to April 7, 2004 (R. 146-47).

Wurdeman (ALJ) (R. 143-164). Plaintiff was represented by current Attorney Mikel Lupisella and Vocational Expert Mary Williams (VE) also testified (R. 160-164).

In a December 30, 2005, decision ALJ Wurdeman concluded that Plaintiff was not under a disability as defined by the Act because he could perform a range of light work that included a significant number of jobs (R. 6-13). In July 2006, the Appeals Council denied Plaintiff's request for review (R. 3-5).

**B.     Background Facts**

**1.     *Plaintiff's Hearing Testimony and Statements***

Plaintiff was 51 years old at the time of the ALJ's decision (R. 6, 38). He completed two years of college and had worked as an installer/repair/service person (R. 9, 43, 48, 62). Plaintiff was receiving a $650.00 a month disability pension from Consumer's Energy, and had health insurance through Health Plus (R. 148-149). He reported living in an apartment with his girlfriend (R. 151).[2]

Plaintiff's last full time employment was with Consumer Energy as a service person, a position he reported holding from July 17, 1978, until February 24, 2004 (R. 62). While Plaintiff reported in his Function Report that he held his job as a service person until February 24, 2004, he testified at the hearing that he stopped working in July 2002 because of problems with his knee.[3] Plaintiff described the incident giving rise to his alleged disability as follows:

---

[2] Prior to moving into his current dwelling, Plaintiff lived in a second floor apartment that required him to negotiate ten to twelve steps (R. 148). He indicated that he often had to hold on to the rail and climb one step at a time.

[3] Plaintiff testified that he was on "limited duty" approximately two years before his alleged onset date of disability (R. 154).

> I was a service technician and I was working out in Fenton. They sent me to do a job at this customer's house and I'd had a lot of problems prior to that, but this particular day I knocked on the door. No one was home and I knocked a couple more times and for some reason my knee gave out. I didn't have no feelings, no nothing in it.

(R. 149).

Plaintiff indicated that he has near constant irritation from his knee, which causes him to have problems bending, squatting and stooping (R. 150). He can sit for an hour and stand for 45 minutes to one hour before needing to change positions (R. 151-A). Plaintiff can walk for 30 minutes to one hour without stopping to relax (R. 152). He can lift a gallon of milk and carry it ten feet. He also reported difficulty sleeping as a result of the irritation and discomfort (R. 151).

Plaintiff also has had lower back pain, which radiated down his right leg into his foot. He indicated that it had limited his ability to drive no more than two hours because of pain in his hip area (R. 153). Plaintiff has used a cushion to help alleviate his pain (R. 151).

Plaintiff has had a number of surgeries, manipulations and steroid shots to help with his condition (R. 155-157). He treated with Dr. Michael Sorscher, Dr. Abdul Razzak and Dr. Bentoner for various reasons, but none had been able to correct his problems. At the time of the hearing, Plaintiff was wearing a knee brace daily.

Plaintiff does not belong to any clubs or organizations, and described himself as a loaner. Plaintiff enjoys fishing, and occasionally did so off of the bank of the river/lake (R. 157). His girlfriend does the grocery shopping and the majority of the housework (R. 151). Plaintiff can clean his apartment, cook, do the dishes, the laundry, iron, vacuum, and dust (R. 55-57, 64-66, 157). He went to funerals, walks sometimes for exercise, drives a car, shops, goes fishing, plays chess and cleans his car (R. 55, 57-58, 64, 66, 151-53, 157).

3

## 2. *Medical Evidence*

Plaintiff submitted records dated 1997 that show Plaintiff underwent a right L5-S1 partial facetectomy, foraminotomy and discectomy (R. 133-134). Aside from the massive disc fragments that were extruded, the surgeon also noted there was some excessive motion at L5-S1 and also at L4-5. A fusion was not performed at that time because "it was felt that [Plaintiff] just had a hypermobile spine congenitally" (R. 134).

Plaintiff had an operation to his left knee in 1999 done by Michael Sorscher, M.D., who found "a large flap tear which was complex, degenerative in nature of the medial meniscus. It did come into the joint . . . The tibia and femoral articular surfaces showed moderate chondromalacia changes, some softening, but no full thickness loss. The notch showed a torn anterior cruciate ligament with lots of scarring . . . The lateral joint showed severe articular cartilage loss with subchondral sclerosis noted and bare bone. Lateral meniscus was somewhat torn, what was left of it . . . The patellofemoral joint was then evaluated and there was a large flap of cartilage tissue in the femoral trochlear groove" (R. 117).

Plaintiff underwent a total left knee replacement by Dr. Sorscher on July 1, 2002, due to degenerative disease of the knee (R. 102-05). Plaintiff underwent manipulation in September 2002, to alleviate postoperative stiffness due to scar tissue and adhesions (R. 100).

On October 24, 2002, Dr. Sorscher reported Plaintiff had no pain with walking and bed mobility (R. 90). Knee flexion was 95 degrees and extension was reduced by approximately 5 degrees. There was good stability and good patellofemoral (one of three knee joints) motion. Left knee x-rays showed excellent alignment of the knee prosthesis with no evidence of abnormality or failure. Plaintiff was planning to return to light duty work on December 2, 2002.

On January 9, 2003, Plaintiff had no pain with walking and moderate pain on bed mobility, but he was not taking anti-inflammatory medication (R. 89). An examination showed full left knee extension and flexion, no instability, and no patellofemoral problem. Left knee x-rays showed a well-aligned knee prosthesis with no evidence of abnormality or failure. Dr. Sorscher stated plaintiff had improved from before his manipulation, and that he would continue to improve.

On July 1, 2003, one year after surgery, Plaintiff had discomfort about the knee, but he did well with walking, having only occasional pain (R. 85). Plaintiff had occasional pain with bed mobility and he did well on stairs. Plaintiff had difficulty with bending and stooping, and he could not kneel. Knee extension and flexion were full. Dr. Sorscher stated Plaintiff can not do his previous work but can do work that did not require stooping, bending or kneeling (*Id.*)

On October 3, 2003, a state agency physician Dr. B. D. Choi, reviewed Plaintiff's medical record, and assessed Plaintiff's ability to work (R. 75-82). He found Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours a day, and sit 6 hours a day (R. 76). Plaintiff could occasionally climb, stoop, kneel, crouch and crawl, and frequently balance (R. 77).

On January 15, 2004, 18 months after surgery, Dr. Sorscher noted plaintiff had no pain with walking, stairs, and bed mobility (R. 84). He had difficulty squatting and kneeling. Plaintiff stated he had an independent medical examination to determine if he could return to work as a gas appliance serviceman. The conclusion was that he would probably not be able to return to his previous work, which, as noted below, was classified by the VE as medium exertion and involving a significant amount of squatting, crawling and crouching (R. 160). Dr. Sorscher

agreed with the IME that this was "likely true." An examination showed full left knee extension and flexion, no instability, and no patellofemoral problem. Left knee x-rays showed a well-aligned knee prosthesis with no evidence of abnormality or failure. Dr. Sorscher scheduled Plaintiff to return for a follow-up visit in one year.

Plaintiff underwent left knee x-rays on April 30, 2005 (R. 140). The results showed status post left knee arthroplasty and no acute process.

### 3. *Vocational Evidence*

VE Williams described Plaintiff's past relevant work as a gas appliance serviceman as medium and unskilled (R. 160). She indicated that the position would involve a significant amount of squatting, crawling and crouching.

The ALJ asked VE Williams a hypothetical question regarding what jobs an individual like Plaintiff could perform assuming he could do light work that precluded squatting, kneeling, crouching and crawling (R. 161). VE Williams replied that such a person could perform about 71,700 jobs in the lower peninsula of Michigan as an inspector, assembly worker and machine operator.

ALJ Wurdeman then asked VE Williams to assume such an individual at the sedentary level of exertion. The VE testified that there would be no skilled or semi skilled work to which this individual could apply his skills (R. 162). Plaintiff's counsel did not cross-examine Ms. Williams.

### 4. *The ALJ's Decision*

ALJ Wurdeman found that Plaintiff was not under a disability as defined in the Social Security Act at any time through the date of his decision (R. 13). Plaintiff met the disability

insured requirements of the Act through December 31, 2007, and that he had not engaged in substantial gainful activity since the alleged onset of disability (R. 12). While ALJ Wurdeman found that Plaintiff had the severe impairment of residuals of left knee arthroplasty, he determined that the severity of Plaintiff's conditions did not meet or equal the requirements of any impairment listed in Appendix 1, Subpart P, of Regulations No. 4 (20 C.F.R. § 404.1520(d)) (the "Listing").

ALJ Wurdeman found that Plaintiff's allegations regarding his limitations were not fully credible because the degree of pain and limitation alleged was not consistent with the objective medical evidence (R. 11). The ALJ noted that was no evidence of significant limitation or ongoing medical treatment from a physician or acceptable medical source that necessitates preclusion of all work-related activities. Indeed, Plaintiff's treating physician concurred that Plaintiff could do a job that did not require stooping, bending or kneeling (R. 11, 85).

ALJ Wurdeman found that Plaintiff retained a residual functional capacity (RFC) for a modified range of light work (R. 11). He had the following postural limitations: no stooping, no kneeling, no crawling and no crouching. While ALJ Wurdeman found that Plaintiff was unable to perform his past relevant work given his physical limitations, he concluded that Plaintiff did have transferable skills, including understanding appliances and installation of gas lines, that could be used for work within his residual functional capacity.

## II. ANALYSIS

### A. <u>Standard Of Review</u>

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is

supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry her burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects.[4] A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform.

**B.** **Factual Analysis**

In his motion for summary judgment Plaintiff argues that ALJ Wurdeman erred as follows: (1.) by improperly assessing his credibility and (2.) by asking the VE an incomplete

---

[4] *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

hypothetical.

### 1. *Plaintiff's Credibility*

Plaintiff contends that the ALJ improperly assessed his credibility as it pertains to his allegations of pain and limitations. Subjective evidence is only considered to "the extent…[it] can reasonably be accepted as consistent with the objective medical evidence and other evidence" (20 C.F.R. 404.1529(a)). The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The issue of a claimant's credibility regarding subjective complaints is within the scope of the ALJ's fact finding discretion. *Kirk v. Secretary of health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981); *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

In determining the existence of substantial evidence, it is not the function of a federal court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 476 (6th Cir. 2003), the Court noted that an ALJ can reject a claimant's credibility on pain and other symptoms, and exclude these from the hypothetical question to the VE, if the ALJ's reasons are adequately explained.

Here, the ALJ properly assessed plaintiff's allegations of pain and symptoms, in light of the minimal amount of evidence in the record that related to the period of time as of Plaintiff's

alleged onset date of April 7, 2004 (R. 11).[5]  The objective evidence within the record failed to establish the presence of any underlying physical condition that could reasonably be expected to produce Plaintiff's alleged disabling pain, and, there was no evidence of any resultant effects caused by any underlying condition that would substantiate plaintiff's alleged disabling pain. *See* 20 C.F.R. § 404.1529(a)(b)(c); Social Security Ruling (SSR) 96-7p; *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1369-1370 (6th Cir. 1991); *Felisky v. Bowen*; 35 F.3d 1027, 1038-39 (6th Cir. 1994).

April 30, 2005, left knee x-rays showed status post left knee arthroplasty and no acute process (R. 140).  Moreover, Dr. Sorscher, Plaintiff's treating physician, reported that since October 2002, left knee x-rays showed a well-aligned left knee prosthesis with no evidence of abnormality or failure (R. 84, 89-90).  Diagnostic findings showed that Plaintiff's left knee condition was not so severe that it would preclude him from performing light work that did not require stooping, kneeling, crawling and crouching.

The record contains no clinical findings regarding Plaintiff's left knee condition as of April 7, 2004, his alleged onset date.  Yet, clinical examination findings from January 2003 do not support Plaintiff's allegations.  Plaintiff had no pain while walking or climbing stairs, and his complaints of pain with bed mobility ranged from no pain to moderate pain (R. 84, 89).  There was full extension and flexion of the left knee, and there was no instability and no patellofemoral problem.  Plaintiff complained of difficulty squatting and kneeling

---

[5] Plaintiff appears to contend that the ALJ did not consider problems with his back. While Plaintiff testified at the administrative hearing he experienced back pain, he never provided any evidence in the record that related to his back condition as of April 7, 2004, his alleged onset date.  Therefore, it was permissible for ALJ Wurdeman not to consider plaintiff's allegations of back pain.

(R. 84), but the ALJ adequately accommodated these limitations when he determined Plaintiff could do light work that did not require stooping, kneeling, crawling and crouching (R. 11).

Moreover, in determining Plaintiff's residual functional capacity, the ALJ reasonably relied on the opinion of Plaintiff's treating physician and surgeon, Dr. Sorscher (R. 11). Dr. Sorscher found Plaintiff could not do his previous work but could do work that did not require stooping, bending or kneeling (R. 85). It is well established that the findings and opinions of treating physicians are entitled to substantial weight. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same); *Bowie v. Harris*, 679 F.2d 654, 656 (6th Cir. 1982); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). The evidence in the record supports Dr. Sorscher's opinion that Plaintiff could do work that did not require stooping, bending or kneeling. Therefore, the ALJ reasonably relied on Dr. Sorscher's opinion when he determined plaintiff could do light work that did not require stooping, kneeling, crawling and crouching (R. 11).

In determining Plaintiff's residual functional capacity, the ALJ also reasonably relied on a portion of the opinion of Dr. Choi, the state agency physician (R. 11). Dr. Choi opined Plaintiff could do light work, and the ALJ found this opinion was consistent with the record as a whole (R.11, 76). This evidence provided additional support for the ALJ's residual functional capacity determination that, because of his left knee condition, Plaintiff could do light work. *See* 20 C.F.R. § 404.1527(f)(2)(i) (ALJ considers opinions from agency physicians who are also

11

experts in Social Security disability). *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 686 (6th Cir. 1992).

Based on the evidence of record, the ALJ reasonably determined that as of April 7, 2004, Plaintiff could do light work that did not require stooping, kneeling, crawling and crouching, and therefore his left knee condition was not disabling.

### 2. *The Hypothetical Question*

Plaintiff claims that the ALJ asked the VE an incomplete hypothetical question because he never included all of Plaintiff's impairments and limitations. The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). To meet the burden of showing that Plaintiff could perform work that is available in the national economy, the Commissioner must make a finding "supported by substantial evidence that [he] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This kind of "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays [his] individual physical and mental impairments.'" *Id.* (citations omitted).

Given the previously discussed medical evidence, the hypothetical question the ALJ asked the VE, and the corresponding answer the ALJ relied on, was adequate and proper because it included all of Plaintiff's substantiated impairments and resultant limitations as of his alleged onset date of April 7, 2004. Indeed, the hypothetical question that the ALJ posed to the VE took into consideration limitations that accurately reflected the difficulties that Plaintiff experienced

and that were supported by the record as a whole. Therefore, the ALJ reasonably determined that because of his left knee condition, Plaintiff could do light work that precluded stooping, kneeling, crouching and crawling (R. 11-12).

Because the ALJ relied on the pertinent evidence within the record, he reasonably determined that Plaintiff was not disabled but could perform a significant number of jobs. Accordingly, substantial evidence supports the agency's decision that the Plaintiff was not disabled.

### III. RECOMMENDATION

For the above stated reasons, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED** and the Commissioner's motion for summary judgement **GRANTED.** The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Sec'y of Health and Human Servs., 932 F.2d 505 (6th Cir. 1991); United States v. Walters, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Sec'y of Health and Human Servs., 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: July 31, 2007                                              s/Steven D. Pepe
Flint, Michigan                                                   United States Magistrate Judge


CERTIFICATE OF SERVICE

      I hereby certify that on <u>July 31, 2007</u>, I electronically filed the foregoing paper with the Clerk Court using the ECF system which will send electronic notification to the following: <u>James A. Brunson, AUSA, Mikel E. Lupisella, Esq.,</u> and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>Social Security Administration - Office of the Regional Counsel, 200 W. Adams, 30th. Floor, Chicago, IL 60606</u>

                                                   <u>s/ James P. Peltier</u>
                                                   James P. Peltier
                                                   Courtroom Deputy Clerk
                                                   U.S. District Court
                                                   600 Church St.
                                                   Flint, MI 48502
                                                   810-341-7850
                                                   pete_peliter@mied.uscourts.gov